# Richmond

## N. W. MARTIN, J. HARVIE MARTIN AND GEORGE N. MARTIN, ETC. V. WESTOVER COURT CORPORATION, ETC.

April 21, 1947.

Record No. 3170.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Charles W. Crowder* and *McC. G. Finnigan*, for the plaintiffs in error.

*Robert C. Lyne* and *M. W. Moncure, Jr.*, for the defendant in error.

HOLT, C. J., delivered the opinion of the court.

The plaintiffs, Martin & Bros., heating contractors, seek to recover from Westover Court Corporation, defendant, balance due on a contract.

Upon defendant's property were built 49 homes. Heating units were installed in each of them by the plaintiffs. It is charged that these heating units were negligently installed and that fires thereafter occurring were due to this negligence.

Rose & Lafoon, Inc., are now and have been for some years real estate brokers. A part of their activities is the development of real estate in the city of Richmond. On a subdivision now known as Westover Court they planned to build 50 homes of a bungalow type—actually 49 were built. Now the title to this property is in the Westover Court Corporation. Rose & Lafoon, Inc., were at first the sole owners of its capital stock. Later they sold that stock to E. H. Wicker, who is now its owner.

It seemed desirable that separate heating units be installed in each of these homes. A type known as the Fluemaster, manufactured by the Round Oak Manufacturing Company of Dowagiac, Michigan, was selected. Detailed specifications of what was necessary in the installation of these units were submitted by these furnace builders to Rose & Lafoon, Inc., which in turn submitted them to N. W. Martin, J. Harvie Martin, George N. Martin, partners, trading as N. W. Martin & Bros., who were heating, tinning and roofing contractors, and had been in that business in the city of Richmond for many years. Plaintiffs, after examining these

specifications, then submitted to Rose & Lafoon, Inc., this bid:

"Richmond, Virginia
October 16, 1942

"Rose & Lafoon
109 N. 8th St.
Richmond, Va.

Dear Sir:

We are pleased to quote you on the Fluemaster Heating System for the 50 residences that you propose to build in Westover Court. We will make the installation which will be complete with Fluemaster Furnace, all necessary duct work, grills and wiring for the fan motor. This price includes the special fire brick for the chimney, but does not include any brick work by us; nor does it include any cutting, patching or painting.

We will make the installation as outlined above for the sum of $274.20 each. Thanking you for this valued business, we are

Yours truly,
N. W. MARTIN & BROS.
T. L. Kriete
T. L. Kriete

TLK:rm"

That bid was accepted and work incident to installation completed.

Final payment, as demanded, was refused. Thereupon, these plaintiffs sought to recover in their motion for judgment. In it these facts are set out: Due as per contract, $13,710.00; paid thereon, $9,965.36, leaving a balance due of $3,744.64.

These figures are based upon the contract charge of $274.20 per unit.

The defendant, answering, pleaded the general issue, and in a special plea of set-off set up that plaintiffs had installed

these heating units carelessly and negligently to the extent that much of this equipment had to be removed, repaired and reconstructed, at a cost of '$3,053.09, made up of these items: Brick work removed and replaced $1,562.65; carpenter labor $562.15; plastering removed and replaced $421.76; removing and replacing paper $126.00; repainting $380.53.

Plaintiffs, by way of replication, said that they had performed their contract properly and that even conceding, for the sake of argument, that they had not, it had been accepted by the defendant with full knowledge, and that the plaintiffs had always stood ready to correct any defects which might have existed.

The defendant contended that there was a balance due of only $516.61 and tendered that sum, which was rejected.

The case then came on for trial. Plaintiffs were given a verdict by the jury of $422.35, which verdict the court confirmed. From it plaintiffs appealed and have been awarded a writ of error.

The manner in which these Fluemaster heating units were constructed and intended to operate is set out in *Greenland Develop. Corp.* v. *Allied Heating Products Co.*, 184 Va. 588, 35 S. E. (2d) 801, 164 A. L. R. 1312.

They do not appear to have been a complete success.

A part of the work performed by plaintiffs was the installation of metal heat ducts through openings made in the brick work of the heating system just above the top, and at the hottest part, of the furnace, to take the heat from the heating chamber out into the rooms. These openings naturally had to be slightly larger than the ducts which went through them, and the plaintiffs as a part of their work were required to fill in or seal with mortar, or non-combustible material the openings in the masonry around the metal ducts, after the ducts had been inserted.

It is the contention of the defendant that these hot air ducts did not rest upon mortar or non-combustible material, but in some instances upon blocks of wood concealed by a thin coating of mortar; that these wood blocks, used by the

plaintiffs' workmen as fillers instead of mortar, were the real fire hazard and caused all the trouble; and that all of its damage, consisting of having to pay for removing and re-installing the extra brick work required by the city after the fires occurred and because the fires occurred and the expense of cutting into the walls and restoring the damages occasioned thereby, were the natural and proximate result of the negligent and faulty work of the plaintiffs' workmen in wrongfully using wood as a filler instead of mortar around the heat ducts and in concealing such wood with a mortar or plaster coating so that such blocks were not seen upon inspection by defendant or the city inspectors.

There were nine fires in this block of buildings. In some instances more than one fire occurred in one home. The city of Richmond, through its Fire Department, became interested and proceeded to examine into their origin and reached the conclusion that the fires were due, in the main, to two causes, namely: exposed timbers and wooden blocks being placed under hot air ducts.

They were of the opinion that some exposed timbers were placed too near the fireboxes and that brickwork intended to insulate them was insufficient for that purpose. Upon conference with the owner, it ordered that these errors in the original installation be corrected. Thereupon the owner proceeded to correct them, and in so doing incurred the expenses set out in its plea of set-off.

There is nothing in the record to show that these plaintiff contractors, in the placing of these heating units, did not follow the plans submitted by the owner to them in estimating the cost of installation of these Fluemasters. Certainly no protest was made to them by the owner when he was ordered to make the necessary corrections. He did make them at his own expense, without notice to the plaintiffs or claim for reimbursement from them; and so the situation stood for eight months and until final payment had been repeatedly insisted upon by the contractors.

Defects in the plan of construction adopted, beyond the placing of blocks of wood under hot air ducts, appeared in

all the other homes in which these Fluemasters had been placed. And so the owner was ordered to make the necessary changes not only in those in which fires had occurred, but in all of the others. There were more than forty of them and in only one of them in which no fire had ever occurred were wooden blocks found under hot air ducts; and yet the defendant seeks to charge the plaintiffs with changes made in the heating units of these forty-odd homes, although their original construction followed the plan submitted to the owner and upon which their bid was based.

It is the contention of the defendant that fires in four of these homes originated in the imbedded wooden blocks under hot air ducts. And when witnesses speak of finding wooden blocks under hot air ducts, they are dealing with buildings in which fires had actually occurred and not with the forty-odd buildings in which there had been no fires at all. There was a conflict of evidence as to the number of fires and where and how they originated. The jury held with the defendant, and we must so hold. It follows that the defendant, by way of set-off, is entitled to recover such damages as it suffered in these four fires held by the jury to be due to plaintiffs' negligence, but in no event can they be held for other defects in the installation of these Fluemasters, unless it be made to appear that they have deviated from the plan originally submitted to them and not approved by the owner. Indeed, as we have seen, their bid included special fire bricks but no other brick work.

Let us assume that these forty-odd houses would some day have been destroyed by fires from these Fluemasters. Plaintiffs did not build them. There is nothing to show that they were not installed according to the plan submitted to them by the owner. Their one act of negligence consisted of putting blocks of wood under hot air ducts which caused four fires; and for this they must pay. For the changes made in the forty-odd houses in which there were no fires, it is perfectly plain that these heating contractors are not responsible because of installation of a type of heating which they did

not design and which they placed in them according to the contract under which they were installed.

Let us assume that each one of these forty-odd houses had been burned down because of inadequate brick work or because exposed timbers had been placed too near the fire-boxes. Negligence of the plaintiffs in these instances is not proven; indeed, it is not charged.

Some confusion came about in this wise: Plaintiffs' claim is not in dispute. They might have rested upon it and have placed upon the defendant the burden of proving its items of set-off. This was not the order of proof adopted.

Since there were only 49 units installed and not 50, plaintiffs can only recover for 49.

As this case must be remanded it is not necessary to examine in detail the instructions. As remanded, a jury should be told that by way of set-off, it should allow the defendant all damages occasioned by the four fires due to unprotected blocks of wood placed under hot air ducts and no more.

*Reversed and remanded.*